# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

JEAN B. GERMAIN,

    Plaintiff,

v.

FRANK B. BISHOP, JR. and
LIEUTENANT T. SIRES,

    Defendants.

Civil Action No. TDC-17-1289

## MEMORANDUM OPINION

Plaintiff Jean B. Germain, an inmate at the North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, has filed a Complaint alleging that prison officials failed to secure his personal property while he was in disciplinary segregation, in violation of his federal and state constitutional rights. Defendants have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Having reviewed the Complaint and the submitted materials, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED.

## BACKGROUND

Germain names as Defendants Frank Bishop, Jr., the Warden of NBCI ("the Warden"); and Lt. Sires, the supervisor of the Property Room at NBCI. Germain alleges that on February 20, 2015, his personal property was confiscated because he had been placed in disciplinary segregation. When he was released from disciplinary segregation on April 26, 2017, his property was not returned to him. On May 5, 2017, Officer Gibbner, a correctional officer on Germain's housing tier, told Germain that Lt. Sires had destroyed his property. According to Germain, that

same day, he submitted a complaint pursuant to the Administrative Remedy Procedure ("ARP") to Officer Gibbner about the destruction of his property. Germain asserts that the Unit Manager did not sign the ARP, and that he did not receive a copy of it as required by policy. He further claims that he was "intimidated" by correctional officers to not submit another ARP about this issue. Compl. ¶ 16, ECF No. 1.

On May 11, 2017, six days after hearing that his property had been destroyed, Germain filed the Complaint in this case. Germain asserts that Warden Bishop and Lt. Sires have violated his rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, as well as rights under the Maryland Constitution.

## DISCUSSION

Defendants seek either dismissal of the Complaint or summary judgment in their favor, on the grounds that Germain did not exhaust administrative remedies and that he has failed to state a plausible constitutional claim.

### I. Legal Standard

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Here, Defendants have submitted exhibits with their Motion. When a court considers matters outside the pleadings, it must construe the motion as a motion for summary judgment. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some indication that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment, and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted). To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d) explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). *See Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 245 (4th Cir. 2002); *Hamilton v. Mayor & City Council of Balt.*, 807 F. Supp. 2d 331, 341 (D. Md. 2011).

In opposing the Motion, Germain has submitted a Rule 56(d) affidavit in which he asserts that discovery is necessary on the issue of whether he filed an ARP relating to the destruction of his property. He seeks evidence to establish that he submitted such an ARP to Officer Gibbner on May 5, 2017, that Officer Gibbner did not provide a copy of the ARP to him and threatened to return him to segregation if he challenged the destruction of his property, and that as result of such "game-playing," such administrative remedies were not available to him. Pl.'s Rule 56(d) Aff. at 2, ECF No. 14. Complaining that his appeals to the Inmate Grievance Office ("IGO") are always dismissed, he also seeks records of the history of his other ARP filings to show that the ARP process is a "sham." *Id.* at 4. Defendants have, in fact, provided the history of his ARP

3

filings by attaching Germain's ARP Index to the Motion. As for the other requested information, the Court concludes that discovery is not necessary to allow Germain to oppose the Motion because, as discussed in greater detail below, even assuming that the facts Germain seeks to establish through discovery are true, he has failed to state a valid federal claim. The Court will therefore construe the motion as seeking summary judgment for purposes of the exhaustion of administrative remedies argument, but as a motion to dismiss for all other purposes.

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The nonmoving party has the burden to show a genuine dispute on a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

## II.  Exhaustion of Administrative Remedies

Defendants argue that Germain's Complaint necessarily fails because he did not exhaust administrative remedies. Under the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134 § 803, 110 Stat. 1321 (1996) (codified as amended at 42 U.S.C. § 1997e(a)):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (2012). A prisoner's failure to exhaust administrative remedies is an affirmative defense, and defendants bear the burden of proving that the prisoner had available remedies but failed to take advantage of them. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). This exhaustion requirement serves a valuable function by "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones*, 549 U.S. at 219. Inmates must exhaust administrative remedies before they bring any "suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

In Maryland prisons, the Administrative Remedy Procedure is the administrative process that must be exhausted. First, a prisoner must file an ARP with the warden of the prison within 30 days of the incident or when the prisoner gains knowledge of the injury giving rise to the complaint. *See* Md. Code Regs. ("COMAR") §§ 12.07.01.04–05.A. (2017). Second, if the ARP is denied, a prisoner must file an appeal with the Commissioner of Correction within 30 days. COMAR § 12.07.01.05.C. An appeal to the Commissioner of Correction may also be filed if the warden does not respond within 30 days to the initial ARP. COMAR 12.02.28.14(B)(5). If the appeal is denied, the prisoner must appeal within 30 days to the IGO. *See* Md. Code. Ann., Corr. Servs. §§ 10-206, 10-210 (West 2002); COMAR §§ 12.07.01.03, 12.07.01.05.B. Inmates may seek judicial review of the IGO's final determinations in a Maryland Circuit Court. Md. Code Ann., Corr. Servs. § 10-210.

5

Exhaustion is mandatory and generally may not be excused unless the administrative procedure is not available. *See Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (An inmate "must exhaust available remedies, but need not exhaust unavailable ones."). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725. In *Ross*, the Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." *Ross*, 136 S. Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

Here, although Germain filed an ARP on May 5, 2017 in which he asserted that he had not received the means to lock his personal property up for safekeeping as required by prison policy, it is undisputed that this ARP did not address the destruction of Germain's personal property. Rather, Germain claims that on May 5, 2017, he also submitted an ARP on the issue of the destruction of his personal property, but he did not receive a copy of it back. Although he could not know whether the ARP was actually being processed, he never sought clarification on whether it was accepted for filing, nor did he appeal the failure to process it or respond to it to the Commissioner of Correction or to the IGO. Rather than seek to determine what happened to the ARP, Germain immediately filed his Complaint in this Court, only six days after he

submitted the ARP, a period of time which would have been entirely insufficient under any circumstances for the Warden to review and rule on the ARP, much less for the entire ARP process to be completed. Germain's actions thus exhibit that he failed to exhaust administrative remedies on his property claim.

Germain, however, asserts that he did not pursue the ARP process because after he submitted his ARP, Officer Gibbner threatened him with "being returned to disciplinary segregation if I were to follow through with challenging the destruction of my property." Rule 56(d) Aff. at 5. Thus, Germain argues that the ARP process was effectively unavailable to him because of the alleged intimidation by Officer Gibbner. The ARP process could be deemed unavailable to Germain if (1) the threat or intimidation actually deterred Germain from lodging a grievance or pursuing a particular part of the administrative process; and (2) the threat would deter a reasonable inmate of ordinary firmness and fortitude from doing so. *See, e.g., Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011); *see also Kaba v. Stepp*, 458 F.3d 678, 685-86 (7th Cir. 2006); *Hemphill v. New York*, 380 F.3d 680, 688 (2d Cir. 2004). The Court need not decide this issue because, as discussed below, Germain has failed to state a plausible claim for relief.

### III. Failure to State a Claim

Germain's claims fail because he has not stated a constitutional claim arising from the destruction of his personal property. First, Germain has alleged no facts that would support a plausible equal protection claim against Defendants. None of his assertions would support a claim that Defendants have treated Germain differently, whether in relation to personal property or the ARP process, based on any particular classification. Second, to the extent that the Complaint could be construed as asserting a due process claim relating to the destruction of Germain's personal property, such a claim also fails. The United States Supreme Court has held

7

that claims of negligent deprivation of property by a prison official do not implicate the Due Process Clause. *See Daniels v. Williams*, 474 U.S. 327, 335-36 (1986). A claim of intentional deprivation of property by a prison official also would not state a constitutional due process claim, provided that the prisoner has access to an adequate post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Tydings v. Dep't of Corrections*, 714 F.2d 11, 12 (4th Cir. 1983) (finding that Virginia law provides for an adequate post-deprivation remedy). The right to seek damages and injunctive relief in Maryland courts in a tort action constitutes an adequate post-deprivation remedy for inmates in Maryland prisons. *See Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982) ("[T]here is no question that the relief available to plaintiff in state court is adequate."); *see also Hawes v. Foxwell*, No. DKC-17-2598, 2018 WL 2389060 at *4 (D. Md. May 25, 2018) (noting that the Maryland Tort Claims Act and the IGO provide adequate post-deprivation remedies), *Fuller v. Warden*, No. WMN-12-43, 2012 WL 831936 at *2 (D. Md. Mar. 8, 2012). Thus, Germain's claim that his personal property was intentionally destroyed does not state a constitutional claim for relief. *See Hawes*, 2018 WL 2389060 at *4 (D. Md. May 25, 2018) (dismissing an inmate's property loss claim for failure to state a cognizable constitutional claim); *Fuller v. Horning*, No. WMN-11-1917, 2012 WL 2342947, at *7 (D. Md. June 19, 2012), *aff'd*, 504 F. App'x 218 (4th Cir. 2013) (stating that "removal of property from a prisoner simply does not state a constitutional claim"); *Young-Bey v. Miller*, No. JKB-16-3435, 2018 WL 4108076 at *4 (D. Md. Aug 29, 2018) (holding that a claim that personal property was destroyed did not assert a constitutional violation).

Germain argues that this state remedy is inadequate because Maryland law requires him to exhaust administrative remedies before filing a claim in state court, but he has failed to do so because of the alleged intimidation by Officer Gibbner. Under the Maryland Prison Litigation

Act ("PLA"), Md. Code Ann., Cts. & Jud. Proc. § 5-1001 to 5-1007 (2013), prisoners must attach to their civil complaints proof that administrative remedies have been exhausted. *Id.* § 5-1003(b). Failure to provide such proof is grounds for dismissal. *Id.* § 5-1003(b)(3), (c). Maryland courts, however, have previously considered and accepted arguments from prisoners that exhaustion was not required under the relevant facts. *See Evans v. State*, 914 A.2d 25, 72 (Md. 2006) (excusing pre-filing exhaustion where the administrative process was later completed); *Massey v. Galley*, 898 A.2d 951, 961 (Md. 2006) (considering and accepting the argument that because a civil action was brought under the Maryland Public Information Act, exhaustion was not required). In particular, a Maryland court may consider an argument that the failure to exhaust administrative remedies should be excused because of misconduct by prison officials. *See McCann v. Shearin*, No. 2752 Sept. Term 2013, 2016 WL 4548698 at *3-4 (Md. Ct. Spec. App. Aug. 30, 2016) (considering but rejecting a prisoner's claim that his failure to exhaust should be excused due to misconduct by prison staff because "the record contradict his contentions that administrative remedies are unavailable to him").

Where Germain did not file a state court action in which he could have sought relief from the exhaustion requirement as part of his claim, but instead filed a federal civil action only six days after the incident underlying his claim, the Court will not conclude that the standard state post-deprivation remedy is unavailable and inadequate. Because Germain has an adequate post-deprivation state law claim, he does not have a viable due process claim in this Court. *See Hudson*, 468 U.S. at 535 (finding no due process claim arising from the destruction of a prisoner's personal property where the state had provided an adequate post-deprivation remedy).

Because Germain has not stated a viable constitutional claim, his § 1983 claims must be dismissed. In the absence of a federal claim, the Court declines to exercise supplemental jurisdiction over Germain's state law claim. *See* 28 U.S.C. § 1367(b)(3) (2012).

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, will be GRANTED. A separate Order shall issue.

Date: September 19, 2018

THEODORE D. CHUANG
United States District Judge